**Not For Publication**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| DEBBIE ARMSTRONG, : | |
| : | Civil Action No. 05-0164 (FSH) |
| Plaintiff, : | |
| : | **OPINION** |
| vs. : | |
| : | March 21, 2006 |
| : | |
| JO ANNE B. BARNHART, : | |
| Commissioner of Social Security, : | |
| : | |
| Defendant. : | |

---

**HOCHBERG, District Judge.**

This matter is before the Court upon Plaintiff's motion to review a final determination of the Administrative Law Judge ("ALJ"), pursuant to 42 U.S.C. § 1383 (c)(3). The Court has considered the written submissions of the parties and decides the motion on the papers pursuant to Fed. R. Civ. P. 78.

**I.     Background.**

Plaintiff, Debbie Armstrong, alleges that her diabetes and depression render her disabled. At the time of the hearings, Plaintiff was a forty-six year old woman educated through the tenth-grade. Plaintiff worked as a hotel housekeeper for approximately eleven years.

Plaintiff applied for Social Security Disability Benefits on May 30, 2000. Her application and request for reconsideration were denied. Administrative Law Judge ("ALJ") Richard L. DeSteno denied Plaintiff's claim for benefits on March 26, 2002. Plaintiff requested review of

1

the ALJ's decision and the Appeals Council remanded the case to the ALJ on June 14, 2002. On September 26, 2002, the ALJ considered the matter *de novo*, and again denied Plaintiff's claim for disability benefits. The Appeals Council denied review of this decision on November 12, 2004.

## II.     Standard for Finding of Disability.

An individual may be entitled to Social Security Benefits upon a finding of disability demonstrating that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A disabling impairment is defined as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D). An individual will be deemed to be disabled only if the impairment is so severe that she is not only unable to do her previous work, but cannot, considering her "age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner of Social Security ("Commissioner") uses the following five-step analysis to determine whether an individual is disabled:

Substantial Gainful Activity. The Commissioner first considers whether the individual is currently engaged in substantial gainful activity. If there is such activity, the individual will be found not disabled without consideration of her medical condition. 20 C.F.R. §§ 404.1520(a) and

416.920(a).

Severe Impairment.  If there is no substantial gainful activity, Plaintiff must then demonstrate that she suffers from a severe impairment or combination of impairments that significantly limits her ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c)) and 416.920(c)).

Listed Impairment.  If Plaintiff demonstrates a severe impairment, the Commissioner will then determine whether the impairment is listed in the regulations set forth at 20 C.F.R. § 404, Subpart P or is equal to a Listed Impairment.  If the individual has such an impairment, the Commissioner will find the individual disabled.

Past Work.  If the individual does not have a listed impairment, the fourth step is to determine whether, despite her impairment, the individual has the residual functional capacity to perform her past relevant work.  Residual functional capacity is defined as what the claimant can still do despite her limitations.  20 C.F.R. §§ 404.1545(a) and 416.945(a).  If she does have the capacity to perform past work, the individual will be found not disabled. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

Other Work.  Finally, if the individual is unable to perform work done in the past, the Commissioner then considers the individual's residual functional capacity, age, education, and past work experience to determine if she can do any other work.  If she cannot perform other work, the individual will be found disabled. 20 C.F.R. §§404.1520(g) and 416.920(g).

The five-step analysis to determine whether an individual is disabled involves shifting burdens of proof.  *Wallace v. Sec'y of Health and Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of production and persuasion through the first four steps;

3

however, if the analysis reaches the fifth step, the Commissioner bears the burden of proving that the individual is capable of performing gainful employment other than the claimant's past relevant work and that jobs which the plaintiff can perform exist in substantial numbers in the national economy. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). If there is a finding of disability or non-disability at any point during the review, the Commissioner will not review the claim further. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

### III.     Standard of Review.

In accordance with 42 U.S.C. § 405(g), this Court must review the factual findings of the ALJ to determine whether the administrative record contains substantial evidence for such findings. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). A decision concerning disability benefits must be upheld by the Court if an examination of the record reveals substantial evidence supporting the ALJ's conclusion. 42 U.S.C. § 405(g). Substantial evidence is more than a mere scintilla of evidence; "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Where evidence in the record is susceptible to more than one rational interpretation, the Court must endorse the Commissioner's conclusion. *Alexander v. Shalala*, 927 F. Supp. 785, 791 (D.N.J. 1995), *aff'd*, 85 F.3d 611 (3d Cir. 1996) (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). "The ALJ's responsibility is to analyze all evidence and to provide adequate explanations when disregarding portions of it." *Snee v. Sec'y of Health and Human Servs.*, 660 F. Supp. 736, 739 (D.N.J. 1987) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981); *Dobrowolski v.*

*Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Gober v. Mathews*, 574 F.2d 772, 776 (3d Cir. 1978).

**IV.     Analysis.**

The ALJ determined that Plaintiff had not participated in substantial gainful activity since the alleged onset date (step one); that the medical evidence suggested that Plaintiff has diabetes and depression, which are severe impairments (step two); and that these impairments do not meet the criteria of any of the listed impairments described in the Regulations (step three). In determining that Plaintiff was not entitled to disability benefits, the ALJ concluded in step four that Plaintiff was not disabled because she retained the residual functional capacity to perform her past relevant work.

Plaintiff makes three arguments in support of reversal or remand of the ALJ's decision to deny Plaintiff social security benefits: (1) the ALJ's step three analysis was not supported by substantial evidence; (2) the ALJ erred as a matter of law in evaluating the severity of Plaintiff's mental impairment; and (3) the ALJ's step four analysis was not supported by substantial evidence.

A. The ALJ's decision

Despite Plaintiff's allegations of inability to perform her past job as a hotel housekeeper, the ALJ determined that Plaintiff has the residual functional capacity to perform her past relevant work. The ALJ considered the record of (a) medical reports from Plaintiff's treating physician, Dr. Kenneth Marius; (b) records of Newark Beth Israel Medical Center; (c) psychiatric evaluation records of Dr. Luis Zeiguer;[1] (d) medical reports from Dr. Anthony W. Cincotta; (e) medical

---

[1] Medical records of Dr. Zeiguer note that Plaintiff's concentration, orientation, memory, and judgment were adequate.

records from Irvington General Hospital; (f) treatment notes from Dr. DeGuzman; (g) medical reports from Dr. Allan J. Hermann;[2] and (h) opinions of State Agency physicians.

The ALJ concluded that Plaintiff's allegations of disability stemming from diabetes and depression were not supported by the medical evidence. As to diabetes, the ALJ found that although Dr. Marius opined that the plaintiff was unable to work, there was no "clinical or objective evidence of significant and persistent disorganization of motor function," as required by the relevant regulations. With respect to Plaintiff's depression, the ALJ concluded that the State Agency's mental assessment failed to support a conclusion of limitation. Rather, these assessments detailed Plaintiff's adequate functioning.

Additionally, the ALJ determined that Plaintiff's complaints are not entirely credible. The medical evidence fails to show that Plaintiff suffers from any substantial orthopedic problems, despite her allegations. Nor has Plaintiff sought or received treatment from a mental health professional, despite claims of depression. The ALJ concluded that even after receipt of anti-depressants from her primary physician, the Plaintiff has consistently failed to follow her doctor's orders.

As a result of the medical evidence and Plaintiff's testimony, the ALJ concluded that Plaintiff is capable of "lifting . . . up to twenty pounds; frequently lifting and carrying objects weighing up to 10 pounds; [and] standing, walking, and sitting up to six hours in an eight-hour day. . . ." In her capacity as a hotel housekeeper, the ALJ concluded that the Plaintiff had the residual functional capacity to perform her past relevant work, as evidenced in her testimony and her disability report.

---

[2] Dr. Hermann noted that Plaintiff's prognosis depended on her compliance with recommended medical treatment.

### B. Review of the ALJ's Decision

Plaintiff first argues that the ALJ did not have substantial evidence to make the determination under step three that Plaintiff's impairments were not of listing severity. Specifically, Plaintiff argues that the ALJ's medical equivalency determination was improper because it was made without consideration of expert medical opinions, as required in *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119 (3d Cir. 2000).  However, the record is clear that the ALJ carefully reviewed all relevant medical evidence in reaching his decision, and found that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." Plaintiff contends that the ALJ did not provide reasons for his decision, as required under *Cotter v. Harris*.  642 F.2d. 700, 704 (3d Cir. 1981).  However, the ALJ evaluated Plaintiff's diabetes under Listing 9.08, and based on the medical evidence, concluded that "there is  no clinical or objective evidence of significant and persistent disorganization of motor function as required by the listing."  The ALJ specifically cited Dr. Cincotta's finding of normal motor function to support his conclusion that Plaintiff's impairment fails to meet the criteria set forth in the regulations.

The ALJ evaluated Plaintiff's mental impairment under Listing 12.04, and found that Plaintiff suffered from a depressive disorder under 12.04A.  However, the ALJ found that Plaintiff's mental impairment did not meet the criteria set forth under 12.04B and 12.04C.  While the ALJ's findings differ from the State Agency's findings of moderate mental limitations, "it is within the ALJ's discretion to weigh the medical assessments and to resolve the conflict accordingly." *Richardson v. Perales*, 402 U.S. 389, 399 (1971).  The ALJ had ample medical evidence that differed from the State Agency's findings upon which to base his findings.

Plaintiff also argues that the ALJ erred as a matter of law in evaluating the severity of Plaintiff's mental impairment. Plaintiff claims that Dr. Marius' opinion that she was unable to work was entitled to controlling weight and that the ALJ rejected medical evidence which was consistent with Dr. Marius' opinion. There was contradictory medical evidence on the issue of mental impairment. Dr. Zeiguer noted that Plaintiff's "concentration, orientation, and memory were adequate," and her condition was partially improved with medication. Furthermore, Dr. Hermann found that Plaintiff had a history of non-compliance with medical treatment, "but if she were to commit herself to a treatment plan and comply with that plan, the prognosis improves." This is sufficient evidence from which the ALJ could base his decision, and the ALJ properly considered the totality of the medical evidence. *Gober v. Mathews*, 574 F.2d. 772, 777 (3d Cir. 1978) (holding that the ALJ may "choose between properly submitted medical opinions"). While Dr. Marius' opinion must not be disregarded, it need not be afforded controlling weight or special significance. Therefore, the ALJ was justified in according less weight to Dr. Marius' statement based on Dr. Marius' failure to provide clinical findings or an objective basis for his opinion, and giving greater weight to the other doctors' opinions.

Finally, Plaintiff argues that the ALJ's step four analysis was not based on substantial evidence. Step four of the analysis requires the ALJ to determine whether the Plaintiff can return to her past relevant work given her medical diagnosis. Here, the ALJ determined that despite Plaintiff's impairments, she could perform the exertional requirements of light work. The ALJ also considered the totality of the record in determining Plaintiff's credibility and whether she could return to past work. The record includes evidence (a) that State Agency physicians found that the Plaintiff "retained the exertional ability to perform light work," (b) the Plaintiff's mental

assessment supports her adequate functioning, and (c) Plaintiff's testimony supports that she can perform a variety of light physical activities.  Based on the entire record, the ALJ had substantial evidence from which to find that Plaintiff's testimony was "not entirely credible" and that she could return to her past relevant work.

In reviewing the ALJ's opinion, the parties' briefs, and the evidence in the record, this Court determines that the ALJ had substantial evidence for his determination at step four that Plaintiff had the residual functional capacity to return to her past relevant work as a hotel housekeeper.  The mere fact that a different conclusion could have been reached based on the evidence in the record does not undermine the ALJ's decision, as long as substantial evidence exists for that decision.  *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *LaCorte v. Bowen*, 678 F. Supp. At 84 (citing *Blalock v. Richardson,* 483 F.d 773), 775 (4th Cir. 1972); *Hawkins for Reilly v. Heckler*, 631 F. Supp. 711, 716 (D.N.J. 1985)).

**V.      Conclusion.**

For the reasons stated in this Opinion, the ALJ's decision is supported by substantial evidence in the record and is affirmed.  An appropriate order affirming the decision will issue.

/s/ Faith S. Hochberg

**Hon. Faith S. Hochberg, U.S.D.J.**